## RYAN et al. v. MUTUAL RESERVE FUND LIFE ASS'N.

(Circuit Court, N. D. Iowa, W. D. October 21, 1899.)

LIFE INSURANCE—TERMINATION OF CONTRACT—REFUSAL TO PAY ASSESSMENTS.

Where the holder of a life insurance policy in a mutual company refused to pay a mortuary call, and announced to the company that he had "quit" on account of dissatisfaction with an increase in the rate of assessments, such action terminated the contract, and there can be no recovery on the policy on his subsequent death, regardless of the question of the legality of the company's action in increasing the rate of assessment.

At Law. This was an action on a certificate of insurance issued by defendant on the life of Cornelius D. Ryan.

F. E. Gill, Ellis & Ellis, and E. S. James, for plaintiffs.

Wright, Call & Hubbard, Hayes & Schuyler, and S. T. Tyng, for defendant.

SHIRAS, District Judge. From the evidence adduced in this case, it appears that on June 17, 1886, Cornelius D. Ryan, then residing at Jackson, Neb., had issued to him a so-called "certificate of membership" in the Mutual Reserve Fund Life Association, a corporation created under the laws of the state of New York, in the sum of $10,000, the same to be paid to the children of Cornelius D. Ryan from the death fund of the association, in accordance with the provisions of the certificate, in 90 days after receipt of due proof of the death of Cornelius D. Ryan during the continuance in force of the certificate of membership; it being further therein expressly provided that, if any of the payments stipulated to be made by the member were not paid when they came due, then the certificate should be null and void. The payments provided for in the certificate are threefold, to wit, the admission fee, the annual dues, and assessments to be made from time to time by the board of directors to create and maintain the death fund and reserve fund. Upon a certificate for $10,000 the admission fee is fixed at $30, and the annual dues at the rate of $2 per $1,000, or $20 in all; and in the certificate issued to Cornelius D. Ryan the annual dues were made payable on or before the 17th day of June in every year during the continuance in force of the certificate of membership. It further appears from the evidence that the admission fee, the annual dues, and the several assessments ordered by the board of directors were paid by Ryan from 1886 up to the year 1898. On February 1st of that year an assessment at the rate of $2.37 per $1,000, or $23.70, was called for from Ryan, and in reply thereto he addressed to the company the following letter:

"Jackson, Nebraska, February 9, 1898.

"Dear Sir: I am in receipt of mortuary call No. 96, on policy 47,945, $10,-000.—$23.70. This is an increase of $3.20. In 1895 my age of assessment was advanced 5 years, and now 6 years more, making an advance of 11 years, or a very appalling advance in rate. From your resolution, I interpret it to mean that hereafter you will assess all members at their attained age. Am I right? If such is the case, and you will assess them according to the table of rates on back of call No. 96, it would cost me, in the next 35 years or my expectancy of life, $2,100 for each $1,000 insured, or three times what it will cost for a paid-up policy in any of the old-line companies. Can it be possible that you intend to pursue such an unjust and arbitrary course? I have paid to you on policy 47,945 about $1,600 on the promises made by you that insurance would be much cheaper than in the old-line companies, but, should your plans change, I should consider that amount obtained by false pretenses. Insurance in the Banker's Life has not increased any in the past 14 years. On the contrary, my insurance in that company was less last year than it was 9 years ago. Another great injustice you will do your policy holders is that in their old age, when insurance in other companies will be greatly enhanced, you put a price on your insurance greatly beyond the cost of what it would have been had they commenced in other companies at the same time they did in yours. Can you tell me what my insurance will cost me for the next 30 to 35 years? Can you give me a positive statement of cost, or can you change this policy for another in which you can guaranty absolutely a level premium during life? I want to know, now, what I will have to pay. I have a letter from you dated 1895, in which you said you were in hopes that you

would not have to increase rates again during the existence of my policy, and here it is only 2½ years when you have advanced it 20%.

"Please answer promptly, and oblige,                                    C. D. Ryan."

Under date of March 16, 1898, the company addressed Ryan in a letter as follows:

"New York, March 16, 1898.

"Cornelius D. Ryan—Dear Sir: We beg to call your attention to the fact that the sum of $23.70, past due under the terms of your policy No. 47,945, has not been received by the Mutual Reserve Fund Life Association, and the policy has therefore lapsed. The executive committee of this association have power to reinstate a delinquent member at any time within one year for good cause shown, and upon satisfactory evidence of good health, and upon payment of all amounts overdue on account of said policy. Remittances may be made by valid check, draft, post-office or express money order, payable to the order of the Mutual Reserve Fund Life Association. It is certain that safe insurance, with better security, at cheaper rates, cannot be obtained from any life insurance company in the world. The fact that you have permitted your insurance with this association to terminate does not preclude our consideration of renewing membership, and we therefore earnestly invite you to forward the amount past due, with a view of reinstating your policy in accordance with our rules and regulations. In case your policy should not be reinstated, the money forwarded to apply on the above account, as herein suggested, will be returned upon your written request, duly received at this office. May we ask you to kindly favor us with your reasons for lapsing, written on the form inclosed, to the end that we may have an opportunity of replying, in order to correct any possible misunderstanding; thus retaining, what we prize equally with your membership, your friendly feeling and good wishes on behalf of the Mutual Reserve. Thanking you in advance for the courtesy of an early reply, I am,

"Very truly yours,                             Charles W. Camp, Secretary."

To this communication Ryan sent the following reply:

"Jackson, Nebraska, March 26, 1898.

"Mutual Reserve Fund Life Ass'n, New York, N. Y.—Dear Sir: Yours of March 16th rec'd. I do not want my policy No. 47,945 reinstated. I am fully convinced that your company is one of the greatest fakes of the age. I have contributed $1,600 in honest money to it, and I don't want to continue putting my money into a rat hole. I have been speaking with people who at the age of 63 years pay $65 per $1,000 per annum to your company, and yet you claim that your company is one of the cheapest consistent with safety, etc. If I had insured in one of the old-line companies at the time I entered your company, I could now have a paid-up policy for $3,300 for the money I have thrown away upon your company. I am informed that you do not receive any new members into the old class, but you assess the old members for a sufficient sum to meet the death losses of that class, with 25% reserve and expenses added. Now, suppose that all of the members of this class die, or let their policies lapse, except 3, who are insured for $10,000 each; now, in the event of death of one of these members, the other two would be assessed $5,000 each, and when the other died the remaining members would have to pay $10,000 more, or if two died at the same time the remaining members would have to pay $20,000. I feel, I presume, as the other members do, that my money has been obtained by false promises. The scheme of the company is to insure members at a low rate while young, and, when they arrive at an age when there is danger, to assess them at such appalling increase that they will quit, probably at an age when they cannot get insurance elsewhere. These are a few of the reasons I have quit. I have lost a good deal of money by it, with not a dollar in return. Suppose a man should have the misfortune to live to be 85 or 90 years, a member in your company, what would he have to pay? If you can name a member of your company 80 years of age, and if he don't verify my statements here made, I will apologize.

"Very truly,                                              C. D. Ryan."

So far as the evidence discloses, this letter ended the correspondence between the parties, and Ryan did not pay the mortuary call for $23.70 made upon him, nor did he pay the annual dues of $20, payable June 17, 1898. He died July 21, 1898, and the company having refused to pay the sum called for in the certificate, on the ground that the same had lapsed and become null and void before the death of the insured, the present action was brought on behalf of the plaintiffs, who are the children of the deceased.

On behalf of the plaintiffs it is claimed that while the company had the right to increase the amount of the mortuary calls made from time to time, if there was need so to do in order to meet the demands upon the death fund, yet this could only be lawfully done by following the mode pointed out in the certificate of membership and the provisions of the constitution and by-laws of the association as they were in force at the date of the issuance of the certificate sued on; and that as the assessment made under date of February 1, 1898, was not levied against him on the basis of his age at the time he obtained his certificate, but on the basis of his age at the date when the assessment was levied, it was illegally assessed, and a forfeiture cannot be predicated on the failure to pay an assessment thus estimated on a wrong basis. The question, however, is not upon the strict legal right of the company to calculate its mortuary calls on the certificate issued to Ryan on one basis or another, and to declare the policy forfeited if the call was not paid, but whether Ryan, by his own acts, had terminated the contract with the association, during his lifetime; for if, for any reason, it was not in force at the date of Ryan's death, then plaintiffs cannot recover in this action.

If it be assumed, for the sake of the argument, that the company could not rightfully base its mortuary calls against Ryan on any other age than that he had attained to when the certificate was issued, the fact remains that it claimed the right to advance the age, and thus to increase the amount of the assessment, when necessary so to do. When the demand for the payment of the call was made upon Ryan, it was open to him to contest the legality of the call as made, and by a proper proceeding in court he could have obtained a judicial interpretation of the contract of insurance; but this he did not do, but, on the contrary, he chose to exercise another right, which was open to him, and that was to terminate the contract relation between himself and the association. The letter of March 26th clearly shows that this was the course he intended to take. The case is not one wherein the company is seeking, after the death of the insured party, to establish a right to declare the contract of insurance forfeited by reason of a failure to meet some of its requirements; but the question is whether the insured did not, during his lifetime, affirmatively put an end to the contract, so that it had, by his action, been terminated before his death. In the letter of February 9th, after drawing a comparison between the promises made to induce taking the insurance and the constantly increasing demands made upon him, he continues: "Can you tell me what my insurance will cost me for the next 30 to 35 years? Can you give me a positive statement of cost, or can you change this policy for another in

which you can guaranty absolutely a level premium during life? I want to know now what I will have to pay." It is evident that no satisfactory response to these inquiries was made to Ryan, and when the company, in the letter of March 16th, called his attention to the fact that he had not paid the mortuary call for $23.70, and urged him to continue his insurance in the association by being reinstated as a member, he replied, under date of March 26th: "Yours of March 16th rec'd. I do not want my policy No. 47,945 reinstated. I am fully convinced that your company is one of the greatest fakes of the age. I have contributed $1,600 in honest money to it, and I don't want to continue putting my money into a rat hole. * * * These are a few of the reasons I have quit.". In accordance with these sentiments, thus vigorously expressed, Ryan did not pay the call for $23.70, nor did he pay the annual dues of $20, which, if the policy had continued in force, would have become due June 17, 1898. No other conclusion can be drawn from his letters and from his acts than that he had become dissatisfied with the association, and had "quit," and, that being the case, the contract of insurance was at an end between the parties; and having been thus terminated by the act of Ryan himself, before his death, the plaintiffs cannot recover thereon. Judgment for defendant.